FILED
Jun 16, 2026
12:38 PM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| **DONNIE DANIELS,**<br>    **Employee**,<br>**v.**<br>**WEST KNOXVILLE PAINTERS,<br>LLC, d/b/a FRESH COAT<br>KNOXVILLE,**<br>    **Employer**,<br>**and**<br>**BUSINESSFIRST INSURANCE<br>COMPANY,**<br>    **Carrier**. | **Docket No. 2025-30-2393**<br><br><br>**State File No. 61946-2022**<br><br><br>**Judge Lisa A. Lowe** |

---

## COMPENSATION ORDER

---

Donnie Daniels sustained injuries at work, and West Knoxville Painters accepted the claim. The issue is whether Mr. Daniels is entitled to permanent total disability, extraordinary relief, or increased benefits. West Knoxville Painters challenged the appropriateness of permanent total disability or extraordinary benefits. For the reasons below, the Court holds that Mr. Daniels is entitled to permanent total disability benefits.

### Claim History

Mr. Daniels worked as a lead painter/crew leader for West Knoxville Painters. Before the work injury, he suffered from a preexisting neck condition and migraine headaches.

In August 2022, he fell from a ladder while painting a house, landing on his head, neck, and left-upper extremity. Mr. Daniels received emergency care and was released with normal diagnostic testing.

1

*Medical Treatment*

Mr. Daniels received authorized care from Dr. Justin Kennon for his left shoulder, Dr. Daniel Branham for his left elbow, Dr. Patrick Bolt for his neck, and Dr. Walter Jermakowicz for neurosurgical care.

Dr. Kennon diagnosed a shoulder contusion that improved with conservative care, and he assigned a 1% rating.

Dr. Branham treated Mr. Daniels's left elbow and placed a 0% rating.

Dr. Bolt diagnosed a cervical strain, and he assigned a 3% rating with restrictions of no overhead work, no outstretched arm use, no lifting over five pounds frequently, and no lifting over 25 pounds maximum. Dr. Bolt further noted that a functional capacity evaluation would likely be "confounded" by Mr. Daniels's lumbar complaints and medical comorbidities.

After Mr. Daniels continued to experience neck pain and headaches, West Knoxville Painters offered a panel of neurosurgeons, and he selected Dr. Jermakowicz.

Dr. Jermakowicz diagnosed post-concussive syndrome and ordered an MRI, which showed a left-foraminal hard disc at C5-6 with correlation for left-C6 radiculopathy. He performed a C5-6 discectomy and fusion and assigned a 15% rating, which included 11% for cervical radiculopathy and 4% for post-concussive syndrome. In October 2024, Dr. Jermakowicz noted, "I do not think [Mr. Daniels] can work because of the injury," and he signed a physician's certification form stating that Mr. Daniels is unable to return to his pre-injury employment.

Dr. Jermakowicz testified that he did not separate the 11% rating between Mr. Daniels's preexisting neck condition and the work injury, and he did not document modifiers as the Guides require. He also confirmed Mr. Daniels had no verifiable radiculopathy at maximum medical improvement but said the symptoms sufficed for him to perform the surgery.

Dr. Jermakowicz later ordered a functional capacity evaluation, which showed that Mr. Daniels gave consistent effort and represented his current functional ability. Mr. Daniels displayed an ability to occasionally lift 20 pounds below his shoulder; frequently lift/carry up to ten pounds below his shoulder; and occasionally lift five pounds above his shoulder. Dr. Jermakowicz adopted those restrictions.

2

West Knoxville Painters hired Dr. Robert Holladay to perform a record review. He found that Mr. Daniels qualified for a Class 1 rating for his neck of 6%, not a Class 2 as Dr. Jermakowicz reported. He explained that Class 1 applies due to Mr. Daniels's non-verifiable radicular complaints, and Class 2 does not apply because it requires verifiable radicular complaints.

Dr. Holladay disagreed with Dr. Jermakowicz's 4% rating for post-concussive syndrome because Mr. Daniels had a normal CT scan and exhibited no other symptoms to support that diagnosis besides a headache. Additionally, he noted Dr. Jermakowicz did not reference a specific AMA Guides table with supportive clinical documentation to warrant a 4% rating.

Dr. Thomas Koenig performed an employer's examination and wrote a 41-page report. Dr. Koenig disagreed with Dr. Jermakowicz's rating because he did not allocate the neck impairment between the pre- and post-injury impairment or document the use of modifiers in forming his opinion. Dr. Koenig found an 8% rating but allocated 4% to Mr. Daniels's preexisting C5-6 radiculopathy and 4% for the work-related cervical spine injury. He assigned a 2% impairment for Mr. Daniels's shoulder injury, resulting in a total rating of 6%.

Dr. Koenig did not mention causation of Mr. Daniels's post-concussive diagnosis but noted potential problems with it due to Mr. Daniels's history inconsistencies. However, he found that if accepting Dr. Jermakowicz's diagnosis, the correct rating would be 2% not 4%.

Dr. Subroto Kundo performed an employer's examination for Mr. Daniels's alleged post-concussive syndrome. He found neither cervical radiculopathy nor post-concussive syndrome. Further, Mr. Daniels sustained no physical restrictions and retained 0% impairment.

*Vocational Assessments*

Michael Galloway testified on Mr. Daniels's behalf. He considered Dr. Bolt's restrictions, Mr. Daniels's age (51), education (high school diploma), and vocational profile (painter/driver), the local labor market, and his lack of transferable skills. Mr. Galloway concluded that Mr. Daniels is 100% vocationally disabled because of the work injury. After completing his report, Mr. Galloway reviewed the functional capacity restrictions and said those did not change his opinion.

3

Michelle McBroom testified for West Knoxville Painters. She found that, based on the opinions of Drs. Bolt, Jermakowicz, and Koenig, Mr. Daniels has a 79% loss of access to the job market. Further, based on the opinions of Drs. Kennon, Branham, and Kundu, Mr. Daniels has 0% loss of access to the job market.

Ms. McBroom identified an error in her input of Dr. Bolt's restrictions but testified that the correct restrictions did not change her opinion. Although she did not consider Mr. Daniels's headaches, she said that he would not be employable if he had to miss one day of work each week because of headaches.

### Average Weekly Wage/Compensation Rate

The parties disputed the average weekly wage and compensation rate on the wage statement. Mr. Daniels testified that wages from the week of July 8, 2022, should be removed because he missed several days that week due to a job accident. He also said that the weeks of December 10, 2021, and March 4, 2022, were likely low due to inclement weather. He suggested that the average weekly wage is $750.34 and the compensation rate is $487.06.

West Knoxville Painters claimed that Mr. Daniels's speculation regarding those specific weeks is insufficient to warrant their removal. It argued $707.50 as the average weekly wage and $471.67 as the compensation rate.

### Contentions

Mr. Daniels argued that he is permanently and totally disabled. He acknowledged a preexisting neck condition and migraine headaches. However, since the injury, he has trouble turning his head, with pain from his neck down his arms, tingling in his fingers, and loss of grip. He said his headaches are different, and he now experiences them three to six times each week. He often vomits and must lie down for hours. Mr. Daniels said he was active before the injury, but now he is unable to golf, fish, or play with his grandchildren. He also testified that he has been unable to work because of the work injury.

His partner, Samantha Babb, confirmed that he suffers from headaches several times a week that cause him to become sick, and he is unable to be around lights or sounds. She also confirmed that, pre-injury, he had an active life but now is unable to do much.

West Knoxville Painters argued that Mr. Daniels is not permanently and

4

totally disabled or entitled to extraordinary relief. Rather, he is limited to increased benefits.

## Findings of Fact and Conclusions of Law

Mr. Daniels must prove all elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2025).

*Medical Opinions*

In this case, seven doctors gave impairment opinions: Kennon, Branham, Bolt, Jermakowicz, Holladay, Koenig, and Kundu. Those doctors assigned the following ratings:

| Doctor | Elbow | Shoulder | Neck | Post-Concussive Syndrome |
|---|---|---|---|---|
| Dr. Kennon | | 1% | | |
| Dr. Branham | 0% | | | |
| Dr. Bolt | | | 3% | |
| Dr. Jermakowicz | | | 11% | 4% |
| Dr. Holladay | | | 6% | Disagreed w/4% |
| Dr. Koenig | | 2% | 4% | 2% |
| Dr. Kundu | | | | 0% |

*Neck Condition*

The main rating differences relate to Mr. Daniels's neck and post-concussive syndrome. "When a trial court is presented with conflicting medical testimony it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that [the accepted opinion] contains the more probable explanation." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *8 (Tenn. Workers' Comp. Panel Jan. 18, 2018).

The impairment opinions of authorized treating physicians Bolt and Jermakowicz are presumed correct but can be rebutted by a preponderance of the evidence. Tenn. Code Ann. § 50-6-204(k)(7). Dr. Holladay reviewed records and did not examine Mr. Daniels. Dr. Koenig testified that he has additional training in impairment assessment, being part of the Bureau's MIRR program. He also prepared an extremely thorough report.

Dr. Bolt's neck rating is close to the ratings of Drs. Holladay and Koenig. Dr. Jermakowicz rated Mr. Daniels's neck significantly higher than the other physicians. Both Drs. Holladay and Koenig explained that Mr. Daniels falls under a Class 1 impairment because he has non-verifiable radicular complaints rather than Class 2, which requires verifiable radicular complaints.

Dr. Jermakowicz testified that Mr. Daniels did not have verifiable radiculopathy at maximum medical improvement. He explained that the symptoms were sufficiently verifiable for him to perform surgery. However, the Guides require verifiable symptoms for a Class 2 impairment at the time of the examination. Drs. Holladay and Koenig could not verify radicular complaints at their examinations.

Dr. Jermakowicz also testified that he did not allocate any of Mr. Daniels's rating to his preexisting neck condition and did not document modifiers as the AMA Guides require. Based on the records and testimony, the Court finds that Dr. Koenig's impairment opinion of 4%, supported by Dr. Holladay, rebuts Dr. Jermakowicz's impairment opinion by a preponderance of the evidence.

*Post-concussive Syndrome*

Drs. Jermakowicz, Koenig, and Kundu provided opinions. Dr. Jermakowicz assigned 4% but testified that Mr. Daniels had no objective findings of post-concussive syndrome and did not explain his rating or reference a table in the Guides. Dr. Koenig questioned the validity of the post-concussive syndrome diagnosis based on some of Mr. Daniels's inconsistencies. However, he noted that if accepting the diagnosis, the appropriate rating would be 2%. Dr. Holladay also disagreed with Dr. Jermakowicz's rating because Mr. Daniels had a normal CT scan, and Dr. Jermakowicz did not identify any Guides table or documentation to warrant the 4%.

Dr. Kundu made several comments at his deposition that discredit his opinions. For example, he said that physical examinations are "so last century" and often irrelevant. The Court affords no weight to Dr. Kundu's opinions.

Mr. Daniels gave some inconsistencies in the histories on different occasions about his loss of consciousness and activities immediately after the fall. However, he explained the difference between his preexisting migraines and the headaches he suffers from after the accident, as well as experiencing confusion and memory loss.

Based on the records and testimony, the Court finds that Dr. Koenig's

6

impairment opinion of 2%, supported by Dr. Holladay, rebuts Dr. Jermakowicz's impairment opinion by a preponderance of the evidence.

The Court finds that Mr. Daniels retains a combined rating of 8% (4% neck, 2% shoulder, and 2% post-concussive syndrome).

*Average Weekly Wage/Compensation Rate*

Mr. Daniels asked the Court to remove the weeks of December 10, 2021, and March 4, 2022, because the wages were likely low due to weather conditions. He also asked the Court to remove the week of July 9, 2022, because he had a job-related injury and took a few days off.

The Court finds that Mr. Daniels did not present sufficient evidence to establish by a preponderance of the evidence that the wage statement should be modified to remove the requested weeks. Mr. Daniels's average weekly wage is $707.50, which results in a compensation rate of $471.67.

*Permanent Total Disability*

Mr. Daniels sought permanent total disability benefits. Tennessee Code Annotated section 50-6-207(4)(B) provides: "When an injury . . . totally incapacitates the employee from working at an occupation that brings the employee an income, the employee shall be considered totally disabled[.]" The assessment of permanent total disability is based upon numerous factors, including the employee's skills, training, education, age, local job opportunities, and the capacity to work at the kinds of employment available in the disabled condition. *Roberson v. Loretto Casket Co.*, 722 S.W.2d 380, 384 (Tenn. 1986). In addition, the employee's "own assessment of [his] physical condition and resulting disability is competent testimony that should be considered[.]" *McIlvain v. Russell Stover Candies, Inc.*, 996 S.W.2d 179, 183 (Tenn. 1999).

Here, Mr. Galloway testified that Mr. Daniels is 100% vocationally disabled, and Ms. McBroom testified that he is 79% vocationally disabled. Mr. Galloway initially relied on Dr. Bolt's restrictions but said that, considering the updated functional capacity restrictions, they did not change his opinion. Ms. McBroom initially erred with inputting Dr. Bolt's restrictions but said the correct restrictions did not change her opinion. Ms. McBroom dedicated a portion of her report to a labor market survey that the Court excluded based on a hearsay and reliability objection.

7

The Court must also consider Mr. Daniels's testimony about his inability to work. He suffers from hand/finger numbness, pain from the neck down into his arms, headaches, memory loss, and confusion. Mr. Daniels estimated the frequency of his headaches at three to six times per week. When he gets a headache, he takes medication, lies down, and occasionally vomits, and the headaches may last several hours. Mr. Daniels's partner confirmed that he suffers from headaches several times a week that cause him to become sick, and he is unable to be around lights or sounds.

The Court finds that Mr. Daniels is permanently and totally disabled based on several considerations, including Mr. Daniels's restrictions, his assessment of his physical condition, and his inability to work. Dr. Jermakowicz noted that he did not think Mr. Daniels could work because of the injury. Mr. Galloway rated him 100% vocationally disabled, and Ms. McBroom acknowledged that he would be unemployable if he missed one day of work each week. Mr. Daniels is entitled to weekly benefits from October 23, 2024, until August 25, 2041. Tenn. Code Ann. § 50-6-207(4)(A)(i).

*Attorney Fees*

Next, Mr. Daniels's attorney requested fees under section 50-6-226(a)(1). The Court may award attorney's fees not to exceed 20% of the first 450 weeks of an award of permanent total disability, provided the fees are paid by the employee.

The Court finds that this case required significant time and expertise on the part of both attorneys. It also presented a novel legal issue. A fee of 20% is statutorily authorized and customary in cases brought before this Court. Therefore, under sections 50-6-207(4)(A)(ii)(a) and 50-6-207(4)(A)(iii), the Court commutes 20% of the first 450 weeks of permanent total disability benefits for Mr. Daniels's attorney's $42,450.30 fee.

Additionally, section 50-6-207(4)(A)(ii)(c) states:

> After the total amount of the commuted lump sum is determined, the amount of the weekly disability benefit shall be recalculated to distribute the total remaining permanent total benefits in equal weekly installments beginning with the date of entry of the order and terminating on the date the employee's disability benefits terminate pursuant to subdivision (4)(A)(i).

8

Mr. Daniels will be eligible for full Social Security retirement benefits on August 25, 2041, when he turns 67. The period of October 23, 2024, through August 25, 2041, is 887 weeks and three days, which at his compensation rate totals $413,856.73. Reducing that amount by the attorney fee of $42,450.30 yields an adjusted total benefit of $371,406.43, which, divided by 887 weeks, equals an adjusted weekly compensation rate of $418.72. West Knoxville Painters shall pay Mr. Daniels's permanent total disability benefits at this rate. It shall also pay accrued benefits from October 23, 2024, through June 17, 2026–86 weeks and two days totaling $40,563.62.

**IT IS, THEREFORE, ORDERED** as follows:

1. West Knoxville Painters shall continue to furnish medical care for Mr. Daniels's injuries under Tennessee Code Annotated section 50-6-204.

2. West Knoxville Painters shall pay Mr. Daniels accrued benefits from October 23, 2024, through June 17, 2026, for $40,563.62 in a lump sum.

3. West Knoxville Painters shall pay ongoing permanent total disability benefits weekly or biweekly until Mr. Daniels is eligible for full Old Age Social Security retirement benefits, and his permanent total disability award is paid in full.

4. Mr. Daniels's counsel shall be paid a 20% fee or $42,450.30 in a lump sum.

5. West Knoxville Painters shall pay the $150.00 filing fee to the Court Clerk within five business days of entry of this order, for which execution may issue if necessary.

6. West Knoxville Painters shall file a Statistical Data Form (SD-2) within ten business days of this order becoming final.

7. Unless appealed, this order becomes final in 30 days.

**ENTERED June 16, 2026.**

_Lisa A. Lowe_
_____
**JUDGE LISA A. LOWE**
**Court of Workers' Compensation Claims**

9

# APPENDIX

**Exhibits:**
1. Mr. Daniels' Discovery Responses & Requests
2. West Knoxville Painters' Discovery Responses
3. Wage Statement
4. Panels of Physicians
5. TIG Surveillance Reports
6. TIG Surveillance Videos
7. Indemnity & Medical Expenses Paid to Date
8. Donnie Daniels' Deposition
9. Greg Spradling's Deposition
10. Dr. Walter J. Jermakowicz's Deposition, with attachments
11. Dr. Subroto Kundo's Deposition
12. Dr. Thomas Koenig's Deposition
13. Michael Galloway's Vocational Report and Curriculum Vitae
14. Michelle Weiss McBroom's Vocational Report (the Court sustained an objection on inadmissibility of the labor market survey portion of the report based on hearsay and unreliability)
15. Dr. Justin Kennon's Form C-32, with attachments
16. Dr. Patrick Bolt's Form C-32, with attachments
17. Dr. Patrick Bolt's Form C-30 A
18. Medical Table of Contents and Medical Records
    - Dr. Patrick Bolt
    - Dr. Daniel Branam
    - Dr. James Choo
    - East TN Community Open MRI
    - Dr. Matthew Finn
    - Dr. Walter Jermakowicz
    - Dr. Justin Kennon
    - Dr. Thomas Koenig
    - Dr. Subroto Kundu
    - Methodist Medical Center
    - Morgan County Medical Center
    - Dr. Robert Holladay
    - Turkey Creek Medical Center
19. Michelle Weiss McBroom CV
20. Workforce Labor Market Survey

## CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as shown on June 16, 2026.

| Name | Email | Service sent to: |
|---|---|---|
| Timothy A. Roberto, Elizabeth Campbell, Employee's Attorneys | X | troberto@brownandroberto.com ecampbell@brownandroberto.com |
| Nicholas J. Peterson, Ashley Dilly, Employer's Attorneys | X | nick.peterson@petersonwhite.com ashley.dilly@petersonwhite.com |

*Penny Shrum*

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

11



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➤ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➤ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s) (Requesting Party):** _____  ☐ Employer ☐ Employee

Address: _____   Phone: _____

Email: _____

Attorney's Name: _____   BPR#: _____

Attorney's Email: _____   Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s) (Opposing Party):** _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____

2. Address: _____

3. Telephone Number: _____

4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)　　　　　　　　　　　　　　　　　　　　　　　　RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries    $ _____ per month     Telephone    $ _____ per month

Electricity    $ _____ per month     School Supplies $ _____ per month

Water    $ _____ per month     Clothing    $ _____ per month

Gas    $ _____ per month     Child Care    $ _____ per month

Transportation   $ _____ per month     Child Support   $ _____ per month

Car    $_____ per month

Other    $ _____ per month (describe: _____ )

10. Assets:

Automobile    $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____     (FMV) _____

Other    $ _____     Describe:_____

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                      RDA 11082